$$\begin{array}{cc} 38 & 297 \\ 134 & 555 \\ 38 & 297 \\ 184 & 573 \end{array}$$

# WILLIAM H. HAYES *et al.*

*v.*

# WILLIAM B. BERNARD.

1. EJECTMENT—*whether the defendant may show outstanding title.* The general rule is, that when a defendant in execution, whose land has been sold thereunder, is sued in ejectment by the purchaser under the execution to recover the possession, he can not dispute the plaintiff's title, and such purchaser takes exactly such estate as the debtor had.

2.  If the defendant, after the sale, abandons the land, but subsequently returns to it, and is then sued in ejectment, he may show an outstanding title, provided, he shows that he has taken possession and holds under it.

3.  FRAUD—*is for the jury.*  The question of fraud, is one for the jury to determine from the evidence.

WRIT OF ERROR to the Circuit Court of Henry County; the Hon. JOHN H. HOWE, Judge, presiding.

The opinion states the case.

Mr. GEORGE W. SHAW, for plaintiff in error.

Messrs. CARPENTER and DUNHAM, for defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of ejectment in the Circuit Court of Henry County, brought by the plaintiffs in error, against the defendant in error, to recover the possession of the west half of the north-east quarter of section one, (1) in township seventeen, (17) north of range two, (2) east of the fourth principal meridian, situate in Henry County. The declaration was filed May 11, 1860, and claimed the fee in the premises.

At October term, 1860, the defendant pleaded the general issue, and a special plea denying his possession of the premises. Issue was joined by plaintiff and a trial had by jury, and a verdict for the defendant. A motion for a new trial under the statute, was made at the same term, and the verdict set aside and a new trial had at the March term, 1861, and a verdict rendered for the defendant, on which the court entered judgment.

The plaintiffs to sustain the issues on their part, read in evidence the record of a judgment by confession, rendered by the Circuit Court of Rock Island County in favor of the plaintiffs, as surviving partners of Hayes, Hopkins, and one

Hilliard, deceased, and against the defendant and James Bernard, who are therein described by their firm name of Bernard & Brothers. This judgment was entered up December 29, 1857, and amounted to eleven hundred and twenty dollars and fifty-eight cents, besides three dollars and forty cents costs. Also an execution and fee bill issued thereon on the 13th of January, 1858, and directed to the sheriff of Henry County, corresponding in all respects with the judgment. Also the indorsement and return of the sheriff of Henry County, as follows:

"This writ came into my hands at 11½ o'clock A. M., January 14, 1858.

"J. F., DRESSER,
"Sheriff of Henry County, Illinois.

"By virtue of this writ and accompanying fee bill, I have levied upon the following described property of the defendants, to-wit: The W. ½ N. E. ¼ Section 1, 17, 2, 80 acres. Sold the above described property, this 19th day of March, A. D. 1858, at public auction, for eleven hundred and sixty-eight dollars and sixty-nine cents, to the plaintiff in this execution, which amount satisfies the within judgment and interest, together with all the costs.

"J. F. DRESSER,
"Sheriff of Henry County, Illinois."

Also a separate certificate of Sheriff Dresser, without date, that he levied this execution on the land as described in the declaration, on the nineteenth day of January, 1858, which certificate was marked "filed January 19, 1858, page 33." The plaintiffs also introduced the book of records containing the record of this certificate and levy, and of the time of filing same, in all respects corresponding with the above. Also, the sheriff's deed to the plaintiffs for the premises, with the necessary recitals therein, dated November 11, 1859, duly acknowledged on the same day and duly recorded on the first day of February, 1860. The plaintiffs then proved by one Jonathan Allen, that the defendant was then residing on the

premises, and had resided thereon more than a year past—
moved there a year ago last January—lived there before that
time, but had gone to Geneseo to live and then moved back—
was off the premises about one year—first went on to the place
four or five years ago—the land is cultivated and has a house
and other permanent improvements on it.   He also stated on
his cross-examination, that George Bernard, a son of the
defendant, also lived on the place at the commencement of this
suit, and before he went to Geneseo to live.

Here the plaintiffs rested their case.

The defendant, after putting in evidence against the
objection of the plaintiffs a copy of the certificate of levy by
the sheriff, the original of which the plaintiffs had introduced,
then offered in evidence against the objection of plaintiffs, a
deed from James and William B. Bernard, to George Bernard,
of the premises in question.   This deed was dated 26th of
November, 1857, and expresses to have been made for the con-
sideration of twenty hundred dollars.   This deed was duly
acknowledged on the same day, and filed for record February
3, 1858, and duly recorded.

The defendant then proved by Daniel Bernard that he was
acquainted with the premises—that they were cultivated and
had a house on them—that on the first of October, 1860, he
occupied them—had rented them of George Bernard, and had
occupied them as a tenant from January 1, 1860—the previous
year they were occupied by one Copley, as tenant of George—
in the season of 1858, George Bernard occupied and farmed
the place himself—in the winter of 1857-8, the place was
occupied by William B. Bernard, the defendant—George
Bernard also lived there, but moved away in the spring of
1858.   On his cross-examination he said he was a single man
and the son of the defendant—that when he lived on the place,
the defendant and his family lived there at the same time—
they all lived together—was under twenty-one years of age—
his father moved on to the place. last time, a year ago on
the 24th of January last—had usly lived in Geneseo,

and before going there, had lived on this farm—lived in Geneseo, a month or two over a year—George was on the place from the spring to the fall of 1858—defendant lived then at the farm when George came there and continued there while George stayed—George helped to cultivate the crops.

This is all the testimony we deem necessary to consider with reference to the principal question made in the cause, and that is, can a defendant in execution, where land is sold under it, if an action of ejectment is brought against him for the possession of the land, dispute the plaintiff's title, and if he abandons the land after the sale, and afterwards returns to it, and is sued in ejectment, can he show an outstanding title, without he shows he has taken possession and holds under it ? The answer to this question determines the propriety of the first instruction given for the defendant, on which the case, appears to us, to turn. The instruction is as follows :

In this case the plaintiffs must recover on the strengh¡of their own title, and not on the weakness of the defendant's title, and it is competent for the defendant to show an outstanding title in George Bernard, in order to defeat the plaintiff's title; and if the jury believe, from the evidence, that at the time of the commencement of this suit, George Bernard was the owner of the land in controversy, and that the defendant was in the peaceable and lawful possession of the land, and that the plaintiffs never were in the prior possession of the land, then it is not necessary for the defendant to connect himself with George Bernard's title, and the jury will find for the defendant.

It is the general rule, when a defendant in execution, when land has been sold thereunder, is sued in ejectment, by the purchaser under the execution, to recover the possession, he can not dispute the plaintiffs' title. The books are full of cases conceding this proposition. *Ferguson* v. *Miles*, 3 Gilm. 358; *Cheny* v. *Denn*, 8 Blackford, 552; *Jackson ex dem.* v. *Graham*, 3 Caines' R. 188. The d⬛trine of all the cases on this point is, that the purchaser c⬛⬛ into exactly such estate as

the debtor had, and if it was a tenancy, the plaintiff will be tenant also, and estopped in a suit by the landlord from disputing his right, in the same manner as the original tenant, who becomes *quasi* tenant at will to the purchaser.

In this point reference is also made to *Masten* v. *Bush*, 10 Johns. 223; *Hobson* v. *Doe*, 4 Blackford, 487, and *Hains et al.* v. *Spencer*, 3 Ind. 494.

If, however, after the sale, the defendant abandons the land, and afterwards returns to it, and is sued in ejectment, he may show an outstanding title, provided he shows that he has taken possession and holds under it. This it is necessary he should do. Suppose the title he had when the land was sold under the execution was defective—that it was never in him in fact, but in a stranger, what rule of law or consideration of public policy should prevent him from showing the title to be in this stranger, and that he holds under him? We know of none. This violates no principle of law applicable to such cases. He does not, by showing this outstanding title in a stranger, and connecting himself with it, defeat any right the plaintiff acquired by the purchase. If the defendant had no right to the land at the time of the sale, the plaintiffs acquired none. He afterwards comes into the possession, under a genuine and *bona fide* title existing in a stranger, and why not? But he must connect himself with that title, and therein is the first instruction for the defendant wrong, as the court held, this was unnecessary. For this error the judgment must be reversed and the cause remanded.

On the other question presented, of fraud in this conveyance to George Bernard, we do not deem it right to express any opinion on the evidence on that point, as it may be different on another trial. All the circumstances relied on to establish fraud, will, of course, go to the jury if legitimate evidence. Among the *indicia* of fraud in such transactions as are here disclosed, are great inadequacy of price coupled with circumstances indicating a fraudulent collusion between the purchaser and vendor to avoid the effect of a recovery against the

vendor, or to hinder, delay and defraud the creditors of the vendor—the relationship of the parties, their business relations, in short, all the circumstances tending to stamp fraud in the transaction. The burden of proving the adequacy of the consideration and the fairness of the transaction, always rests with the party who may have advanced the one, and who alleges the other.

This question of fraud, is for the jury, and they will find it in the case, if it is proved to exist.

As to the question of variance between the levy and execution and judgment, it is only necessary to say, that it is a mere question of identity, and if all these documents be taken together, it will be apparent, the parties are the same, though a mistake was made in the attempt to give the true names of the firm. It was held, in the case of *Loomis* v. *Riley*, 24 Ill. 307, that a misrecital of the judgment and execution in a sheriff's deed, where they are so described that they may be fully identified, is not fatal. In this case, the purchaser under the sheriff's sale, was a party to the judgment and execution. We, therefore, are of opinion, that the variance showed is not such a one as should vitiate the proceedings.

For the reasons given, the judgment is reversed and the cause remanded.

*Judgment reversed.*